This next case is 4-15-0258 Joseph Mazurkiewicz v. Platinum Group Properties, LLC et al. Appearing for the appellant is Attorney Stuart Clark and for the appellee, Attorney James Martinkus. Good morning. Mr. Clark, are you ready to proceed? I am. All right, you may. Good morning, Your Honors, and may it please the Court. This case is about a gentleman, our client, who moved into an apartment only to find it crawling with cockroaches. Dozens of cockroaches, those are the ones that he could see. He calls his landlord that night and gets no response. He calls his landlord the next morning and gets no response. He waits a full week and gets no response. So he calls us and asks us to get him out of his lease because his landlord won't deal with a cockroach infestation. Who would want to live in an apartment infested with cockroaches? And we sent his landlord a letter and we got no response. And we sent his landlord a second letter. And then we got a response. And the second letter, in addition to saying, no, I'm not going to let him out of his lease, said, well, I'll let him out of his lease if you pay me money beyond even the buyout in the lease, pursuant to a lease provision that on its face violates your ban of residential landlord and tenant ordinance. Oh, and by the way, the landlord said he'll keep our client's security deposit also. So we filed a lawsuit on behalf of our client to vindicate his rights and the rights of those persons who are situated just like him. But instead, we ended up with a court who was opposed to the very concept of a class action, who compared it to bearitry, which is a criminal act, and believes that the lease preempts the urbana ordinance and not the other way around. And that is why we are here today. There are three points I'd like to address before your honors. Number one, that the court below erred in denying our motion for class certification. Number two, that the court erred in finding for the defendants at trial after denying class certification. And number three, that the defendant's brief should be stricken for failure to comply with Illinois Supreme Court Rule 341. The Illinois appellate courts, all five of them, and the Illinois Supreme Court, have spoken with one voice repeatedly that a trial court should not consider the merits of an action in determining class certification. Specifically, as stated by the Second District in Cruz v. Unilock, the trial court is not permitted to make factual findings on the merits. Are any of those cases, cases that preceded to judgment, the verdict or however it would have been disposed of, summary judgment, or are those cases involving interlocutory appeals of a denial of class certification? I believe the cases, and we cited several different cases in our briefs, those cases are all over the map, your honor. There are cases that come from after judgment. There are cases that are interlocutory. And the reason is that regardless when class certification is made, at the time that inquiry is supposed to be made, an inquiry into the merits of the case is simply not permitted. It doesn't matter what happens afterwards. And so, I understand what your honor's question is saying. If I understand you correctly, you're asking, well, what is the point now since there was a judgment afterwards? Well, actually, I'm just asking about the precedential value of the cases that you have cited to, whether they were similarly situated in terms of their procedural background, whether or not they were appeals from an interlocutory order denying certification, or if they had preceded the judgment as this case had. I believe they are both, your honor. Cruz, I think, was an interlocutory appeal. But the reason that it matters here, your honor, is that there is not a single case in Illinois which says that the standard changes when your appeal is afterwards. There is not a single case which says that. Every case, the Illinois Supreme Court, Illinois appellate courts, have all said that you are not permitted to look at the merits when you're doing a class certification inquiry. And here is why that doesn't matter. Because there is a vast difference between doing a class action trial and doing an individual action trial. You call different witnesses. You have the benefit of class discovery, which we didn't have here. You have the benefit of potential settlement discussions, which we didn't have here. You have the benefit of looking at different people who are similarly situated, which creates an inference that the named plaintiff also had that happen to him, which we didn't have here. And so all of those are factors which demonstrate that that's the reason why this test exists. Because at class certification, you're simply asking, are there other people who are just like the named plaintiff? That was not the test that was applied by the court below. And it doesn't matter what happens after that, because what essentially you've done is you've poisoned the well for later. And that's why, regardless of what the end result of the case was, the standard is always the same. And that's why there has never been a case that says, well, if there's a judgment later, the standard is different. Because essentially, it's a hindsight. It's a hindsight factor. It would be essentially saying, well, it's okay to apply the wrong standard now if you plan to go to judgment later. The standard is always the same. If there is merit in the underlying case before class action is appropriate, such as if the trial judge in this case says, I rule against you on the merits, isn't that inconsistent with being a vehicle for a class action? Well, for two reasons, Your Honor, I don't believe that is the case. Number one, for example, in Cruz v. Unilock, the appellate court said, and I quote, the trial court made factual findings on the merits which was not permitted at the class certification stage. Well, pausing right there, there's no question but that it's permitted here because this is a trial on the merits. Well, Your Honor, the class certification hearing was separate from the trial on the merits. The class certification hearing occurred months before the trial. I'm asking about the trial on the merits. We have a trial on the merits, and the judge ruled your case had no merit, ruled against you. Given that, why can't this court, when viewing the argument that the class certification was inaccurate, look at the ruling that says your underlying case had no merit, and then conclude that forget about the class certification? So if I understand Your Honor's question correctly, it is assuming that Your Honors were defined that our underlying case had no merit, the class certification issue is moot, is that correct? No, not just moot, you lose. We don't have to, you have, don't you have to have a meritorious case in your underlying case in order to argue for class certification? Yes, we believe, yes, absolutely, Your Honor. And in this case, the trial court conducted a trial, and as the trial fact said, you don't. Why doesn't that end the inquiry? Because, Your Honor, for two reasons. Number one, we believe, as we put in our brief, that the trial court was in error when it said that the underlying case had no merit. And we go through that in some length, and I can address that right now. Well, that would be the better argument, because it seems to me if the trial court was right, your class certification argument has no basis. Well, Your Honor, we respectfully disagree with the trial court in saying that our underlying case had no merit. Well, what was the second reason why you were, I'm sorry, I interrupted you on that. That's fine, Your Honor. The second reason was that it doesn't vitiate the obligation of the trial court to follow the correct standard. And regardless of what the trial court eventually found, it doesn't change the fact that at the time the trial court made the class certification analysis, or more precisely failed to make the proper class certification analysis, there had been no trial yet. Assuming you're right, that's not the situation now in appeal. On appeal, we have the entire record before us, and we have the ruling on the merits. Assuming that ruling was correct, your class certification loses, doesn't it? If, Your Honors, we're to find that the trial court below was correct in its ruling that we had no, that our case had no merit, then yes, Your Honor, it would be correct. However, we believe that the court below erred in that respect as well, and here is why. First of all, your Banner Residential Landlord and Tenant Ordinance is derived from the same uniform act as the Chicago Residential Landlord-Tenant Ordinance, the Evanston Residential Landlord-Tenant Ordinance, the Mount Prospect Ordinance, and a number of other state statutes across the country. Every court that has considered interpretation of those ordinances and statutes, including our own Supreme Court in Lawrence v. Regent Realty, has held that, and I quote, a landlord's duty to comply with the statute is absolute, there are no exceptions. What the trial court here did was say that the problem with our case was essentially that it was a breach of contract case. The court below said that we have to interpret the contract in a way that is consistent with the statute. The problem is that the Urbana Ordinance, by its terms, section 12.5-10, expressly preempts and prohibits certain contractual provisions on the face of those provisions. And the court was engaging in circular reasoning, saying that because we have to interpret these contractual provisions in a manner that is consistent with the law, therefore they are legal. The ordinance does not permit that kind of circular analysis. The ordinance says, if you have a provision that violates the ordinance, then it is a violation of the ordinance. End of story. And as Lawrence explains, because it is a strict liability ordinance, willfulness is not required, and you don't need to engage in these kinds of mental gymnastics to save the lease. What if the court didn't believe your client's cockroach story? That would not have anything to do with the ordinance violations, such as the attempts to enforce an unlawful lease provision and the failure to return the security deposit. Even if the court found that our client was not credible when it comes to cockroaches, and that was not, by the way, Your Honor, the finding that he actually made. He said simply that the 50 or more cockroaches didn't rise to the level necessary to be a habitability violation. But even if what the court below had said was, well, I don't believe your client, that still doesn't fix the problem with the ordinance itself. And here is why. The lease had a provision which said, for example, the landlord doesn't have a duty to mitigate damages in direct violation of the Forcible Entry and Detainer Act, and direct violation of the appellate court holding in St. George's. The lease had a provision which said that if the tenant moves out for any reason early, the tenant owes the entire amount of rent. So what you have is a tenant who moves out for a habitability violation. And what happens is, now the landlord collects rent from that tenant, and also from a new tenant who moves in. Two tenants for the same unit that has a habitability problem. That is a perverse result from this lease, and directly what the Urbana Ordinance was trying to prevent. And I would add that it was this very court that first created the implied warranty of habitability in the first place. And so to hold that a lease could essentially provide to a landlord a windfall for a violation of that implied warranty of habitability would be another perverse result. What we have here is a lease that was designed to violate the Urbana Ordinance, and which the landlord enforced in such a manner as to violate the ordinance. And what the court below did was to view this as a breach of contract claim. The court below never actually applied the ordinance. And if you look at the transcripts from the various hearings, the court below never actually conducted any analysis into what the ordinance said. The court below only conducted an analysis as to what the lease meant. And that was not the causes of action we were actually bringing. I would also add that Section 12.5-3 of the Urbana Ordinance specifically states that any provision in a lease that violates any provision of the ordinance must fall. There is nothing in the Urbana Ordinance that allows for a saving clause for any lease provision which violates any provision of the ordinance. And I would note that other appellate courts who have interpreted similar ordinances, like the Mount Prospect Ordinance, like the Evanston Ordinance, like the Chicago Ordinance, all of which are almost verbatim the same, have always held with one voice, this is a strict liability ordinance, and the ordinance prevails over lease provisions to the contrary. For example, in Evanston v. Create, one of the cases that we cited in our brief, the issue presented was whether, and similarly to this case actually, was whether the Evanston Ordinance had the authority to preempt a lease provision in a private lease contract. And the appellate court, 1st District held, not only does it have the right, it does in every instance. You just look at the ordinance. Does the plain language of the contract violate the plain language of the ordinance? Here, it plainly does, for the reasons we stated in our brief. We also would note, referring to the failure to return our client's security deposit, that the Urbana Ordinance is a hybrid of the Uniform Act and the Illinois Security Deposit Return Act. Under Hayward v. Tinervant, which we cited in our brief, the landlord is presumed to be withholding the tenant's security deposit for damages purposes. There was never any evidence introduced at the trial, or at any other time, to rebut that presumption. And so essentially, what happened was, the landlord kept our client's security deposit. The landlord still has our client's security deposit. And notably, the landlord never filed any counterclaims, or affirmative defenses, or any kind of set-off claim, that would explain why the landlord gets to keep the security deposit. And this is just another example of how the court below was viewing this as a breach of contract claim, not a statutory action, which is what this case actually is. I would add one other example of why this lease so clearly violates the Urbana Ordinance. Section 12.5-10 states that the tenant cannot waive any rights that are provided for under the ordinance, or under any state or federal statute. That's very clear. That's what the Urbana Ordinance says in black and white. Paragraph 13 of the lease states that the lessor may re-let the premises after the tenant leaves, in the middle of a lease, for any reason. And that, quote, the re-letting shall not discharge lessee from liability for rent herein reserved, nor from any other obligation under the terms of the lease. How should this court view your failure to show up and make a closing argument to the trial court? Your Honor, with respect to that, the closing arguments were supposed to be submitted in writing. Therefore, there was no failure to show up on our part. As far as not providing a closing argument, it is fairly common in trials to stand on the evidence you presented. That is simply what we did. Did you tell the court that? Yes, we did, Your Honor. Mr. Ring, who appeared for the ruling, did indicate that we were standing on our argument. So the trial court was mistaken when he said, I'm going to set this matter down for written closing arguments? No, Your Honor, he was not. At the time that he said it for written closing arguments, we had intended to file a written closing argument. Afterwards, we decided to simply stand on the evidence that we presented. And after that point, we told the court that, that we were planning to stand on our written closing argument. Stand on the evidence presented, rather, as opposed to filing a written closing argument. And there is nothing in the rules that requires us to file a written closing argument. We are permitted to stand on the evidence presented. And the closing argument would not have contained any evidence that was relevant, because we couldn't have presented anything in the closing that we didn't present at the trial. Therefore, whether we did or whether we did not provide a written closing argument is irrelevant to how the trial court viewed the evidence. The closing argument is a matter of style, not a matter of substance. Now, going to the habitability issue. We cited in our brief, Applegate v. Inland Real Estate, which is a very similar set of facts to this one. In Applegate, just as here, the tenant moved in,  this court, in Applegate, held that that was enough for a constructive eviction. That when you are living with dozens of cockroaches, you shouldn't have to live with dozens of cockroaches. And that you are allowed to leave the premises and not continue to live there. It's actually part of mitigating your own damages. Now, here is the other issue. We gave the landlord, or our client gave the landlord, a full week, a full week, to fix the problem before returning the keys. That is actually more time than was provided in Applegate. And I would note that, as we explained in our brief, only two cockroaches can free a $342,000 by the end of the eight-month lease that our tenant signed. He saw dozens of cockroaches. Dozens of cockroaches. Which means he had no reason to believe that the landlord would at any point repair the problem because the landlord never contacted him, never got back to him the full week he was waiting when he called him multiple times as he testified at the trial. Therefore, he had two choices. He could sit and wait while the cockroaches multiplied, or he could leave. And as was explained in Applegate, the existence of that degree of an infestation is a constructive eviction. What about the provision in the ordinance about how a landlord deliberately attempts to enforce any provision in the rental agreement which is prohibited that constitutes a violation? Did any of that occur here? Yes, Your Honor. And one of the examples that we put in our brief is this. The landlord sent us a letter demanding money, demanding additional monies pursuant to those lease provisions. One of the lease provisions that I just mentioned. That was the basis for his demand for money. And that is exactly what we said. Now, I would note that this was a point of dispute in the briefs. The list of things that a landlord does, according to the ordinance, is not exhaustive. Nothing in the ordinance says, only these four things constitute an unlawful enforcement of an illegal lease provision. Nothing says that. On the contrary, if you look at the ordinance, it's actually, those are exemplars. Those are all those things are. This is not an exhaustive list. Now, I see that I'm running out of time. Are there any other questions I can answer? I don't believe so. So with that, Your Honors, I would reserve the balance of my time if possible for rebuttal. And we would request that Your Honors reverse the judgment of the court below and also reverse the denial of class certification. Thank you very much. Thank you. You have time in rebuttal. Mr. Martinez. Thank you, Mr. Court. Counsel. The first point I'd like to make is that this court has traditionally given great deference to trial courts. In this particular case, even though counsel suggests otherwise, there was plenty of contradictory evidence. Mr. Zierkiewicz testified that the individual, Mr. Zierkiewicz, never called my client, Mr. Zierucki, told him about the bugs, any of these things. All sorts of different factual issues. The court ruled against the plaintiff on these factual issues. The other thing is, as Justice Steigman brings up, typically if you're going to complain about something, show up. And this was a case where he was directed to give a closing argument. There was no telephone call or written memorandum to the court or counsel stating we're not going to file any written argument. I'm glad you mentioned that. Mr. Clark certainly seemed to imply that they chose not to do that and apparently contacted the court and you to let you know. That's not true, Judge. I mean, I even filed a motion for default. And then when all this was sent, notice was sent, then when I went to present this to the court, the court said I'm not going to do this on default, even though I could. I'm going to do it on the merits. And that's what Judge Leonard did. He looked at all this information. So it wasn't a matter of inviting but directing closing arguments? Judge, I think it was simply a question of they didn't even bother to show up. That's not my question. Oh, I'm sorry. Did Judge Leonard, when this case was over, direct the filing of written closing arguments? Yes, sir. Or did he request it? He directed it as far as I recall, Your Honor. Go ahead. He directed each of us to file closing arguments. We filed ours. They never filed theirs. There's just a lot of misstatements here that I think the court has to be aware of. First of all, the counsel keeps referring to the Chicago ordinance, the Evanston ordinance. That's not before you. It's their banner ordinance. And they, in fact, did that, I think, disingenuously. At one point, they tried to suggest that they have a separate action if, in fact, they failed to give a copy of the ordinance. That was only in the Chicago ordinance. We pointed out to the trial court, that's nowhere in their banner ordinance. And if he keeps talking about an absolute liability, their banner ordinance specifically says, the landlord shall be considered to have deliberately attempted to enforce a prohibited lease provision if the landlord knew or reasonably should have known that the provision was prohibited, and then the landlord either refuses to approve a sublease, refuses to provide a service, serves the tenant with written demand concerning termination for nonpayment of prohibited fees, or files suit against the tenant to enforce the prohibited provisions. None of that occurred in this case. My client never did any of those things whatsoever. If you look at the attempt here. What about the argument that it's not an exhaustive list, it's just exemplars? Well, that certainly is an argument that this court could look at, but I don't think anything here would give rise to suggesting that what he did was to attempt to enforce it. If he made some reference that their money was still owed, I don't think that's enough to actually make an attempt. That might simply be in negotiations when they're getting letters from the But I don't think there's nothing here that would really rise to that level. And moreover, if you look at really the evidence that was presented, it was disingenuous or even deceitful. Here, in order to try to prove a violation of the housing code, they called two Urbana inspectors, and they testified that, yeah, there was a problem with the building, which was completely alleviated a year and a half earlier. There's never been any problems with Apartment 18, which was the source of this particular issue. And again, they don't include provisions of the ordinance. Failure to return security deposit does not apply if it's held for unpaid rent. And again, there's no application of interest on the security deposit if the tenant is in default. So the court made a determination that this individual was in default. When you look at the facts of the case, Joseph McGirtz was an undergrad student. He gets into a tiff with his roommate, goes in, rents a place for one day. He makes up with his roommate, then all of a sudden decides he doesn't want to be on the lease. He makes up a cockroach story. The court didn't find that there was cockroaches. My client testified that there had been a Chinese student for a year and a half, never complained, has a regular 30-day maintenance program. He inspected. There was never any indication whatsoever. Mr. McGirtz doesn't take a picture. If there's infestation, you'd expect him. Kids nowadays with their phones, they're everywhere. Take a picture and show the court. This is all in front of Judge Leonard. There's nothing here, in my view, that gives rise to Judge Leonard doing something that was so wrong or against the manifest way of the evidence. Case is presented. He ruled against them. They don't like it. Now they're here asking you to undo it. There's nothing for you to undo. Counsel, is my understanding correct that you filed a motion with this court to supplement the record with your closing arguments and your motion seeking to hold the plaintiff in the fault? Judge, I did. And we denied that on September 25th? You did. Then what's it doing? Why are those documents in your brief that was filed October 1st? Maybe they should have been in the judge. Maybe I erred. Well, I did pretty clearly, Mr. Martekis. If we denied it, they shouldn't be there. Then I apologize to the court. My thought was that Mr. Mazurkowitz had to show a complete record before this court. It was his burden to have everything in front of the court. Well, I can understand that's why you filed your motion. But given our denial, I think that should be the end of the matter. Then it was my error and I apologize. Any questions? I don't see any. Thank you. Mr. Clark, rebuttal. So, Mr. Clark, were you directed to submit a written closing argument or was it a request? It was our understanding that it was a request, Your Honor. What does the docket show? What does the court order show? And Mr. Martekis says you didn't bother with the courtesy of contacting him or the court that you weren't going to do it. Your Honor, to be perfectly honest, I was not the attorney who was responsible for that, so I cannot speak to that person. I don't mean to hold you personally accountable, counsel. I understand that, Your Honor. But nonetheless, it's a matter – you're looking at a bench composed of trial court alumni. And that's where our sympathies lie. And if I were the trial judge and I entered that order, I wouldn't be pleased at the failure not to show up and the failure not to tell me that you weren't going to. I understand that, Your Honor. But I do want to clarify one thing. This was not a failure to show up. If this was – perhaps there was a misunderstanding where someone got their wires crossed, but the closing argument is not evidence. Well, counsel, I could assist you here in providing some information. On October 29, 2014, the matter was called for trial, evidence heard. According to the court's docket entry, it states, quote, the court takes the matter under advisement of the parties to submit written arguments, close quote. So that is the court's docket entry for October 29. And then on March the 16th, after notice of hearing had been sent on – or filed on February the 13th, the court states in the docket entry, the remaining defendants appear by Mr. Martinkus, no appearance by plaintiff or anyone on plaintiff's behalf. So I'm just reading to you from the court's docket. Thank you, Your Honor. And I apologize to the extent I was in error regarding that. Okay, go ahead. But it doesn't change the fact that a closing argument is not evidence. And the trial court was required to weigh the evidence and not weigh closing arguments. The evidence presented simply did not support the findings that the trial court below made, particularly when the trial court in the trial court's own summation of the court's findings stated that he was interpreting the lease, that he was treating this essentially as a breach of contract case, and that he didn't think that an infestation of dozens of cockroaches rose to the level of habitability violations. Now, what if he didn't find an infestation of cockroaches at all? Then he wouldn't have to reach that second question, would he? If the trial court found that our client was not credible, then yes, Your Honor, you are correct. However, once again, that doesn't change the issue of the ordinance issue.  But if the examples of enforcement are not exemplars, but that's the limitations of it, then you don't have any claim under the ordinance, do you? You still have time. Go ahead. Look, Your Honor, I think the issue would be this. That would be up to Your Honor to decide what the ordinance actually meant, because it would be... Assuming we decide that, then you've got no claim. But if Your Honor were to decide that, then yes, we would not have a claim. However, I would point out, Your Honor, this. The letter was written pursuant to the lease and demanded money. There is nothing in that section of the ordinance which says that that is an exhaustive list. Nothing. There is no word that includes only these or shall include only these. There is no word that... Well, in the other ordinances you cite, like the state ordinance, there's clear language about these are only examples. Is that correct? It depends on the ordinance, Your Honor. For example, in the Chicago ordinance, there is a much larger list, which is... No, I'm talking about doesn't the state statute deal with how these are just examples? Which state statute are you referring to, Your Honor? I can't remember the name of it. Because there are a number of different... That's just the reason I'm asking. There are a number of different ones. But in the absence of... And Your Honors are certainly... Or the language in including but not limited to would have helped. Certainly. But there also is no language that says that it is limited to these. And Your Honors are all familiar with the canon of statutory interpretation, that where the language is what the language is, you can't read into the ordinance further limitations. The Supreme Court said that in Lawrence, that when they're interpreting the Chicago ordinance, you can't read into the ordinance additional limitations. Given these are both progeny from the same uniform act, and in many cases they are verbatim the same, these two provisions between the Chicago ordinance and the Urbana ordinance are almost verbatim the same. Based on that, it is very unlikely... It would strain credulity to say, well, the Chicago ordinance, you can't read in limitations. The Urbana ordinance, you can. Even though, with the exception of a couple of words here and there, well, they're the same. That doesn't make any sense. And especially when every other ordinance in the state is interpreted one way, Urbana would be a different way. That wouldn't make sense to interpret it that differently. All right. Mr. Clark, you're out of time. Thank you very much, Your Honors. All right. Thank you, counsel. Both cases will be taken under advisement, and a written decision shall...